## AFFIDAVIT IN SUPPORT OF APPLICATION FOR CRIMINAL COMPLAINT

I, Task Force Officer Jeffrey M. Brown, being duly sworn, depose and state as follows:

### Introduction and Agent Background

1.      I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.

2.      I am a Detective Sergeant with the Middleborough Police Department, where I have been employed since 2012. In addition, since 2018, I have been assigned to the Financial Investigations Team of the New England Field Division of the Drug Enforcement Administration ("DEA") as a Task Force Officer. I am a graduate of the MBTA Transit Police Academy.

3.      As a Middleborough Police Detective and DEA Task Force Officer, I am authorized to investigate violations of the laws of the United States, including violations of federal narcotics laws in Title 21 of the United States Code. I have received training regarding narcotics investigations while attending the police academy and have attended additional specialized training courses in furtherance of my past and current assignments, including the Basic Narcotic Investigation course conducted and presented by the DEA training staff.

4.      I have participated in all aspects of drug investigations, including physical surveillance, surveillance of undercover transactions, the introduction of undercover agents, the execution of search warrants, the effecting of arrests, and debriefings of defendants, informants and witnesses who had personal knowledge regarding major narcotics trafficking organizations. I have also reviewed recorded conversations and telephone, financial, and drug records. Through my training and experience, I have become familiar with the manner in which illegal drugs are imported, transported, stored, and distributed, and the methods of payment for such drugs. I have

also become familiar with the manner in which narcotics organizations utilize various forms of violence and intimidation in furtherance of their narcotics trafficking activity, to protect their operations, members, narcotics, and narcotics proceeds.

5.      The statements contained in this affidavit are based on my participation in the investigation of the criminal activity described herein, as well as information provided to me by other federal agents and police officers involved in this investigation, and my experience, training, and background as a Task Force Agent with the DEA. Since the affidavit is being submitted for the limited purpose of securing the requested criminal complaint, I have not included every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish the requisite probable cause.

## Purpose of the Affidavit

6.      I submit this affidavit in support of an application for a criminal complaint charging (4) Freddy Artemio Guerrero Soto ("Guerrero Soto") with conspiracy to distribute and possess with intent to distribute controlled substances, including fentanyl, methamphetamine, and cocaine, in violation of Title 21, United States Code, Section 846.

## Probable Cause

7.      On September 12, 2024, this Court issued a criminal complaint charging (1) Anderson Ernesto Andujar Echavarria ("Andujar"), (2) Waner Bernabel Presinal ("Bernabel"), and (3) Carlos Fabal ("Fabal") with conspiracy to distribute and possess with intent to distribute controlled substances, including fentanyl, methamphetamine, and cocaine, in violation of Title 21, United States Code, Section 846. That complaint and accompanying affidavit are attached hereto as Exhibit 1 and incorporated by reference.

8.      As was set forth in detail in Exhibit 1, late last year, agents commenced an

investigation into Andujar, who over the past ten months has been recorded distributing thousands of pressed fentanyl tablets as well as powdered fentanyl, cocaine, and crystal methamphetamine to an undercover agent ("UC"). Through physical surveillance and information derived from search warrants to track the locations of cellular telephones and automobiles used by Andujar and others to distribute controlled substances, agents identified Bernabel as a co-conspirator who worked with Andujar to distribute fentanyl pills and identified Fabal as a fentanyl pill supplier to Andujar. As of the date of this affidavit, I have received analyses from the DEA's Northeast Regional Laboratory (NERL) which confirmed that the pills Andujar distributed to the UC on December 13, 2023, February 1, 2024, and April 12, 2024 contained a combined net weight of 660.27 grams of fentanyl, a Schedule II controlled substance. The DEA laboratory has also confirmed that Andujar distributed cocaine, methamphetamine, and fentanyl in powder form, all Schedule II controlled substances, to the UC.

9.      In addition to the criminal conduct detailed in Exhibit 1, on September 12, 2024, agents directed the UC to contact Andujar. During the call, the UC ordered 30,000 pressed fentanyl pills and 500 grams of powder fentanyl from Andujar, who agreed to provide the pills and powder the next day. Andujar and the UC agreed to meet at a Holiday Inn parking lot near the South Bay shopping center in Boston.

10.      Earlier today, September 13, 2024, the UC was in contact with Andujar by phone. Andujar confirmed to the UC that he was ready to complete the deal. Agents on surveillance observed Andujar leave his residence at 23 Mt. Ida Road in Dorchester carrying a white plastic bag. Agents observed Andujar walk to his 2018 white Honda Accord parked nearby and sit in the Honda for several minutes. Agents then observed a man, later identified as Guerrero Soto, approach Andujar's car on a motorized scooter, wearing a distinctive Russell Athletic black, white,

and red backpack. Agents observed Guerrero Soto enter the passenger seat of Andujar's car with the backpack. After a few minutes, Guerrero Soto got out of Andujar's car, got back on his scooter with his backpack, and drove off.

11.      Agents followed Andujar as he proceeded to drive in his white Honda Accord in the direction of the Holiday Inn parking lot meeting location. Before Andujar arrived at the meeting location, agents observed that Andujar's white Honda Accord came to a stop at a car wash a short distance away from the Holiday Inn parking lot. When he arrived at the car wash, Andujar spoke to the UC by phone and advised him that Andujar was not going to deliver the pills himself but instead was sending his "brother."

12.      A short time later, Guerrero Soto arrived in the area of the Holiday Inn parking lot on his scooter and appeared to watch the UC's vehicle. Andujar drove off in his white Honda Accord and Guerrero Soto proceeded to meet with the UC. Guerrero Soto put his scooter in the back seat of the UC's vehicle, got in the UC's front passenger seat, and handed the UC the black, white, and red backpack. The UC opened the backpack and pulled out a white plastic bag that contained a shoe box. The UC opened the shoe box and observed thousands of blue pressed pills and bags filled with a brown powder. While Guerrero Soto was with the UC, the UC and Andujar had a conversation while the UC's phone was using its speaker phone function. With Guerrero Soto listening, the UC asked Andujar, "This has everything, the 30,000, the 500?" and Andujar replied to the UC, "Yes, it's all there."



13.    Shortly after the call, agents moved in and arrested Guerrero Soto. Agents arrested Andujar a short time later in his white Honda as he drove away from the meeting location. Agents then moved in to arrest Bernabel and Fabal. Agents executed search warrants where they seized additional suspected controlled substances, packaging materials, and a money counter from the residences of Andujar, Bernabel, and Fabal.

14.    A closer examination of the contents of the shoe box shows that the box contained fifteen bags of thousands of blue pressed pills and five bags of a brown powder. Because of the dangers inherent in handling or even touching fentanyl, agents have not conducted a field test of the items in the shoe box. However, the bags appear to contain approximately 30,000 of blue pressed pills that are similar in size, shape, and color to those purchased from Andujar during the course of this investigation. As noted above, several of those earlier seizures, with similar-looking pressed pills, have been analyzed by DEA NERL and have been determined to contain fentanyl, a Schedule II controlled substance. In addition, based on my training and experience, including earlier seizures made in this case, I believe that the brown powder in the bags contains fentanyl,

a Schedule II controlled substance. Andujar has distributed similar-looking bags of brown or beige powder to the UC that DEA NERL confirmed contained fentanyl.



\\

\\

\\

\\

\\

\\

\\

\\

Conclusion. For the reasons set out above, I respectfully submit that there exists probable cause to believe that (4) Freddy Artemio Guerrero Soto conspired with (1) Anderson Ernesto Andujar Echavarria ("Andujar"), (2) Waner Bernabel Presinal ("Bernabel"), and (3) Carlos Fabal ("Fabal") to distribute and possess with intent to distribute controlled substances, that is, fentanyl, methamphetamine, and cocaine, in violation of Title 21, United States Code, Section 846.

Respectfully submitted,

/s/ Jeffrey M. Brown

_____

Jeffrey M. Brown
Task Force Officer
Drug Enforcement Administration

Sworn to via telephone in accordance with Federal Rule of Criminal
Procedure 4.1 on September 13, 2024

_____
HON. M. PAGE KELLEY
UNITED STATES MAGISTRATE JUDGE